FILED
2004 Dec-20  PM 12:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **BARBARA REMBERT and** )<br>**ANNIE WILSON,** )<br>                                    )<br>           **Plaintiffs** )<br>                                    )<br>     **v.** )<br>                                    )<br>**I. C. SYSTEM, INC.,** )<br>                                    )<br>           **Defendant.** ) | **CIVIL ACTION NO. CV-03-HS-2362-S** |

### MEMORANDUM OF DECISION

This case is before the Court on the Motion for Summary Judgment (doc. 20) filed by the Defendant I.C. System, Inc. The Court has reviewed the motion, the memorandum of law in support thereof, and the supporting evidentiary submission. Furthermore, the Defendant filed its motion on May 20, 2004. The Court extended the Plaintiff's time to oppose the motion until July 6, 2004. Nevertheless, as of this date, the Plaintiffs have failed to oppose the motion.

In consideration the Defendant's motion, its evidence and arguments of law in support thereof, and in light of the Plaintiffs' failure to oppose the motion, the Court hereby finds and orders as follows:

1.      There are no factual disputes in this case. The facts are that after losing her job, the Plaintiff stopped making payments on a debt she owed to First Line Care, Inc. ("First Line Care") for her emergency room treatment. In May 2003, First Line Care, in turn, retained the services of the Defendant I.C. Systems ("ICS") to assist in the collection of Rembert's debt, in the amount of $1,333.20. Affidavit of Susan E. Johnson, ¶ 3 (attached to Evidentiary Submission as Ex. A) (hereinafter "Johnson Aff."). ICS's collection records show that it made a total of eleven telephone

calls to Rembert in which a collector spoke to Rembert and/or a third party at Rembert's residence over the three-month period from May 23, 2003, through August 24, 2003. Johnson Aff., ¶ 4. The collection calls were made between 12 noon and 7 p.m. Rembert Inter. Resp. 16.

2. ICS also sent four debt collection letters to Rembert over this same three-month period–one each on May 23, June 24, July 24, and August 25, 2003. Johnson Aff., ¶ 5. These letters were all addressed solely to Rembert. *See* Rembert Dep., pp. 88-89 & Exs. DX2 - DX5 thereto (attached as Exs. F, G, H, and I, respectively, to Evidentiary Submission). ICS made no contact with Rembert, either by telephone or in writing, after August 25, 2003. Johnson Aff., ¶ 5.

3. In all of its communications with the Plaintiffs, the Defendant and its agents never threatened plaintiffs with bodily harm, used profane language, threatened them with arrest, or threatened to garnish their wages. *See* Rembert Dep., pp. 68-69; Wilson Dep., pp. 34-35 (attached to Evidentiary Submission as Ex. C). Instead, Rembert's main complaint is that the callers were "rude and nasty." Rembert Dep., pp. 73-74. The Plaintiff herself testified by deposition that the only threat that she perceived in the communications was that her credit rating might be harmed. Rembert Dep., p. 68.

4. None of the collection calls was directed at the Plaintiff Wilson or anyone else living in the house except for Rembert. Wilson's involvement in the telephone calls was based solely upon her voluntarily intervening in the conversations upon hearing Rembert talking on the telephone with the collectors. Wilson Dep., p. 32.

5. "A summary judgment motion should be granted when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law.'" *Nat'l Alliance for the Mentally Ill v. Bd of County Commissioners*, 376 F.3d 1292, 1294 (11th Cir. 2004) (quoting Fed. R. Civ.P. 56(c)).  A "genuine issue of material fact" exists only "[i]f a reasonable jury could . . . find in favor of the nonmoving party." *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004).  "[T]he evidence and all factual inferences therefrom" are to be viewed "in the light most favorable to the party opposing the motion." *National Alliance*, 376 at 1294 (citation omitted).  Summary judgment can be entered on the basis of the nonmoving party's failure "to make a showing sufficient to establish the existence of an essential element of that party's case." *Nolen v. Boca Raton Community Hospital*, 373 F.3d 1151, 1154 (11th Cir. 2004).

6. Plaintiffs allege in their Complaint that ICS violated 15 U.S.C. § 1692c(a)(1) by contacting the Plaintiffs at a time or place Defendant knew or should have known was inconvenient to the Plaintiffs.  However, the statutory section of the FDCPA cited by Plaintiffs makes any collection calls made between 8 a.m. and 9 p.m. *presumptively* convenient:  "In the absence of knowledge or circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antimeridian and before 9 o'clock postmeridian, local time at the consumer's location."  15 U.S.C. § 1692c(a)(1).  The undisputed evidence indicates that all calls were made between 12:00 noon and 7:00 p.m.  Furthermore, the Plaintiffs failed to present any evidence of "circumstances to the contrary" or any knowledge by ICS of "circumstances to the contrary."  *See* § 1692c(a)(1).  The Court therefore concludes as a matter of law that the Defendants did not contact the Plaintiffs at a time or place that the Defendants knew to be inconvenient.

7. Plaintiffs allege in their Complaint that ICS violated § 1692d by engaging in conduct the natural consequence of which was to harass, oppress, or abuse the Plaintiffs.  Section 1692d of

the FDCPA prohibits the "use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person." There is no evidence to support Plaintiffs' claims that ICS violated this section of the FDCPA. Furthermore, ICS made no more than 12 telephone calls to Rembert during a three-month period during presumptively convenient times. The number and content of these calls fail to indicate that ICS had any "intent to annoy, abuse, or harass" Plaintiffs in violation of § 1692d(5). *See Masuda v. Thomas Richards & Co.*, 759 F. Supp. 1456, 1465-66 (C.D. Cal. 1991) (mailing of 48 letters to debtor – on average of six letters per month – not "harassing" or violation of § 1692d of the FDCPA); *cf. Chambers v. Habitat Co.*, No. 02-1990, 2003 WL 21377492 (7th Cir. June 9, 2003) (unpublished decision) (dismissing FDCPA claim for failure to allege any facts showing that debt collector's collection efforts were made with intent to harass or oppress plaintiff).

8.      Plaintiffs allege in their Complaint that the initial written communication did not contain the information required by the FDCPA. Compl., ¶¶ 13-15. However, the letters contain the amount of the debt, the name of the creditor, and the initial letter contained all three statutorily required notices informing the Plaintiff of her rights under the law. *See* 15 U.S.C. 1692g(a)(1)-(5). Accordingly, the Court concludes as a matter of law the letter comports with the requirements of the FDCPA. *See generally Smith v. Computer Credit, Inc.*, 167 F.3d 1052, 1053-54 (6th Cir. 1999) (comparing contents of debt collection letter and requirements of § 1692g, finding letter comported with statutory language requirements, and affirming dismissal of FDCPA claims to extent that they failed to specify particulars of how letters violated FDCPA).

9.      Alabama law recognizes an invasion of privacy claim based upon a creditor's collection efforts where there is a "wrongful intrusion into one's private activities in such a manner

as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Jacksonville State Bank v. Barnwell*, 481 So. 2d 863, 865 (Ala. 1985); *Liberty Loan Corp. v. Mizell*, 410 So. 2d 45, 47 (Ala. 1982). However, "[t]he mere effort of a creditor, . . . to collect a debt cannot without more be considered a wrongful and actionable intrusion. A creditor has and must have the right to take reasonable action to pursue his debtor and collect his debt." *Mizell,* 410 So. 2d at 47-48 (quoting *Norris v. Moskin Stores, Inc.*, 132 So. 2d 321, 323 (Ala. 1961)). It is only where the creditor takes actions which exceed the bounds of reasonableness, that the debtor has an action against the creditor for injuries suffered. *Barnwell*, 481 So. 2d at 865-66. The Court concludes as a matter of law that ICS's collection efforts were reasonable and did not rise to the level of a "wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities."

      10.     Wilson lacks standing in this action because it is undisputed that Wilson is not the debtor, no collection activities were initiated against her, the collection calls were not directed to her, the collection letters were not addressed to her, and she did not read the collection letters. *See Kropelnicki v. Siegel*, 290 F.3d 118, 130 ($2^d$ Cir. 2002); *Burdett v. Harrah's Kansas Casino Corp.*, 294 F. Supp. 2d 1215, 1227 (D. Kan. 2003); *Dewey v. Associated Collectors, Inc.*, 927 F. Supp. 1172, 1174 (W.D. Wis. 1996).

      11.     Plaintiffs allege in their Complaint that ICS was "negligent in the supervision and training of personnel hired for the purposes of collecting funds, monies, and personal property from the alleged debtors, consumers, and members of the general public, which Plaintiffs were, said personnel having made the communications to the Plaintiffs." Compl., ¶ 25. "In order to establish a claim against an employer for negligent supervision, training, and/or retention, the plaintiff must

establish that the allegedly incompetent employee committed a common-law, Alabama tort." *Thrasher v. Ivan Leonard Chevrolet*, 195 F. Supp. 2d 1314, 1320 (N.D. Ala. 2002) (citing *Stevenson v. Precision Standard, Inc.,* 762 So. 2d 820, 824 (Ala.1999)).  Because Plaintiffs' common law invasion of privacy claim – the only underlying state law tort claim pled – is due to be dismissed as a matter of law, the claim for negligent training and supervision must be as well.  Furthermore, pleading a federal law claim will not support a state-law claim for negligent training and supervision. *See Thrasher*, 195 F. Supp. 2d at 1320.  Additionally, even if Plaintiffs could prove the elements of an underlying tort, there is no "affirmative proof that the alleged incompetence of [any] employee was actually known to the employer or was discoverable by the employer if it had exercised due diligence." *Ledbetter v. United Am. Ins. Co.*, 624 So. 2d 1371, 1373 (Ala. 1993).  Absent affirmative proof that ICS knew or should have known of its employees' incompetence, general allegations that more or different training should have been instituted, or that there should have been more supervision,[1] are not sufficient to sustain a claim of negligent and/or wanton training and supervision.  *Portera v. Winn-Dixie*, Inc., 996 F. Supp. 1418, 1438-39 (M.D. Ala. 1991).

---

[1] There is "not an identifiable difference" between claims of negligent supervision and negligent training.  *See Portera*, 996 F. Supp. at 1438 (citing *Zielke v. Amsouth Bank, N.A.*, 703 So. 2d 354, 358 n.1. (Ala. Civ. App. 1996)).

In summary, the Court finds that no material issues of fact remain and that Defendant I.C. Systems, Inc. is entitled to judgment as a matter of law as to all claims asserted by Plaintiffs. A separate order will be entered.

**DONE** and **ORDERED** this 20th day of December, 2004.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge